Priority
Send ✓
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK U.S. DISTRICT COURT
MAR 20 2007
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

RAMON MORENO, et al.,

    Plaintiffs,

v.

GUERRERO MEXICAN FOOD PRODUCTS, INC., a division of GRUMA CORPORATION, et al.,

    Defendants.

CASE NO. CV 05-7737 DSF (PLAx)

ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## I. INTRODUCTION

Plaintiffs Ramon Moreno and Ernesto Moraila seek certification of a class of "Drivers"[1] that were allegedly denied overtime, meal breaks, and itemized wage

---

[1] Plaintiffs define the class as "Delivery Drivers," a fictional nomenclature not defined by Plaintiffs in either the First Amended Complaint or Motion for Class Certification. Defendant refers to the class as "Sales Drivers," a job category set forth in the parties' collective bargaining agreement ("CBA"). At oral argument, Plaintiffs indicated that the class is broader than only Sales Drivers, and is intended to include *all* categories of drivers enumerated in the CBA. For purposes of this motion, the Court uses the term "Drivers" to refer to all drivers encompassed by the CBA, including sales drivers, extra drivers, and relief drivers. (See Garcia Decl., Ex. R 355.)

statements because their former[2] employer Defendant Gruma Corporation ("Gruma") erroneously classified them as "exempt." Having considered the papers submitted by the parties and having heard the oral argument of counsel, the Court GRANTS Plaintiffs' Motion for Class Certification ("Motion").

## II. FACTUAL BACKGROUND[3]

### A. The Parties

Gruma is a Nevada-based company that, through its Guerrero Mexican Food Products, Inc. division ("Guerrero"), produces "Guerrero" brand tortillas and related products at its plants in Los Angeles and Rancho Cucamonga, California. (Torres Decl. ¶¶ 4-6.) Defendant distributes its products through a shipment facility in Burbank, California. (Id. ¶ 6.)

Plaintiffs deliver Defendant's products to, and stock the shelves of, Defendant's retail store customers. (Torres Decl. ¶ 13.) Plaintiff Ramon Moreno began working for Gruma in 1992 (FAC ¶ 5), and was terminated by Gruma on January 5, 2005. (Id.) Plaintiff Ernesto Moraila began working for Gruma in February, 1991, (id. ¶ 6), and continued to be employed by Gruma until February 7, 2007 (see Compton Decl. ¶ 2).

The putative class members are parties to a Collective Bargaining Agreement ("CBA") between Gruma and Wholesale and Retail Food Distribution Teamsters Union Local No. 63, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local No. 63"). (Garcia Decl. ¶ 13, Ex. R.) The CBA sets forth the compensation structure for Drivers. (Gruma's Third Party Compl. ¶ 11.) Under the terms of the CBA, Drivers are categorized as "exempt employees" (Garcia Decl. ¶ 13, Ex. R), and consequently

---

[2] Apparently the entire group of employees has been terminated, but some may continue in the same capacity as "independent contractors."

[3] The Court accepts these facts as true for purposes of this Motion only.

2

do not receive premium pay or overtime compensation. (Garcia Decl., Ex. R 346.) The CBA provides for a daily fixed salary rate, and commission for each Driver based on the sales generated on his route. (Garcia Decl. ¶ 13, Ex. R.) Plaintiffs claim that Defendant misclassified Drivers as "exempt employees," denied them overtime compensation, and failed to provide required breaks and itemized wage statements in violation of California law. (FAC ¶¶ 2-3.)

### B. Drivers' Duties

A central issue in this litigation is the extent to which Drivers engage in sales activities. Defendant claims that the "focus of the [] Drivers' job is their selling activities." (Opp'n 5.) In support of its assertion, Defendant points to the following: (1) Drivers earn commissions based on their sales activities (Garcia Decl. Exs. L 180; R 355); (2) Drivers' duties include gauging product demand and accordingly calibrating the orders they place for stores on their routes (id. Exs. A 22, 41; H 151, O 282); (3) Gruma conducts weekly "One on One Meetings" for Drivers to review sales, identify promotions, set sales goals, and conduct sales training (id. Ex. P 289, 290-91, 293-94, 297, 304); (4) Drivers are regularly coached on how to seek additional sales space (id. Exs. G 115-16; H 143-44); and (5) Drivers are provided with sales training materials and attend training meetings designed to increase sales (id. Exs. A 49; J 169-173; L 186-87; M 222-23; O 270-76).

Plaintiffs, on the other hand, contend that, despite their title, Drivers have virtually no sales-related responsibilities. Rather, Drivers' duties are primarily driving the delivery truck to Defendant's distribution facility, loading products onto the delivery truck, driving to customers' stores on the sales route, meeting with receiving clerks, removing stale product from stores, unloading and shelving product, generating invoices, and loading empty boxes back onto the delivery truck. (Torres Decl. ¶ 13; Aldana Decl. 1-4.) According to Plaintiffs, Gruma's Business Development Managers ("BDMs") are responsible for most sales-related

3

matters. (Torres Decl. ¶¶ 14-15.) For example, BDMs negotiate product prices and shelf space, offer rebates and promotional sales to most Gruma customers, and are responsible for bringing in new accounts. (Id. ¶¶ 15, 18.) Plaintiffs concede that at least a few of the Drivers negotiated product pricing and placement with minor independent stores, negotiated shelf space, and attempted to find new retail customers. (Torres Decl. ¶ 13.) However, they contend that those drivers spent less than 10% of their time engaged in such activities. (Id. ¶ 19.)

### III. LEGAL STANDARD

Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). The party seeking certification must satisfy all requirements of Rule 23(a), id. at 1234, which are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representatives are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of all members of the class.

Next, the party seeking certification must show that they satisfy one of the three provisions of Rule 23(b). Valentino, 97 F.3d at 1233. A class may be certified under Rule 23(b)(1) if the prosecution of separate actions would create a risk of inconsistent judgments. Rule 23(b)(2) certifications are appropriate where the party opposing the class has acted or refused to act on grounds generally applicable to the class, justifying injunctive or declaratory relief. A class may be certified under Rule 23(b)(3) where questions of law or fact common to members of the class predominate and a class action is superior to other available methods.

Rule 23(c)(1) directs the court to determine "at an early practicable time"[4] whether to certify an action as a class action. At this stage of the proceedings, the Court must accept the factual allegations in the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975). However, because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," a court must often look behind the pleadings "to evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160 (1982) (internal quotation marks omitted); see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 168 (3d Cir. 2001) ("In reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action."). The proponent of the class bears the burden of demonstrating that class certification is appropriate. In re N.D. Cal., Dalkon Shield IUD Prods. Liab. Litig., 693 F.2d 847, 854 (9th Cir. 1982).

## IV. ANALYSIS

**A. Rule 23(a)**

Plaintiffs must first show that the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – are met.

**1. Numerosity**

"To satisfy [Rule 23(a)(1)'s] requirements, the proponent must first establish that a class does in fact exist." O'Connor v. Boeing N. Am., Inc., 180

---

[4] In 2003 this language was adopted to replace the former guideline: "as soon as practicable after commencement of an action." Fed. R. Civ. P. 23(c)(1)(A), Advisory Committee Notes, 2003 Amendments. This change reflects the view that additional time may be required to conduct discovery. "A critical need is to determine how the case will be tried. An increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof." Id.

F.R.D. 359, 367 (C.D. Cal. 1997). "A class definition should be precise, objective, and presently ascertainable." Id. (internal quotation marks omitted); see also Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 163 (C.D. Cal. 2002) ("Prior to class certification, plaintiffs must first define an ascertainable and identifiable class.").

Plaintiffs propose the following class definition: "All persons who were employed as delivery drivers by Defendants since October, 2001 at the Guerrero depots." (FAC ¶ 20.) The proposed definition is not sufficiently "precise and ascertainable" because it does not define the fictional nomenclature "delivery drivers." Plaintiffs, however, have indicated that they will amend the class definition to explicitly encompass all categories of drivers defined in the parties' CBA. On that basis, the Court concludes that Plaintiffs have defined an ascertainable and identifiable class.

"Next, the party seeking certification must demonstrate that the size of the class defined makes joinder impracticable." O'Connor, 180 F.R.D. at 367. In determining whether joinder would be impracticable, however, a court may also consider "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." Wang v. Chinese Daily News, 231 F.R.D. 602, 606 (C.D. Cal. 2005) (citing Jordan v. County of Los Angeles, 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982)). Although the number of class members is not necessarily the deciding factor, "where a class is large in numbers, joinder will usually be impracticable." Jordan, 669 F.2d at 1319.

Here the proposed class has 286 members. (Markun Decl. ¶ 13, Ex. A.) The proposed class will therefore be so numerous as to render joinder of all members impracticable. Defendant does not dispute this point. The Court finds that the numerosity requirement of Rule 23(a)(1) is met.

## 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This rule "has been construed permissively," and its requirements "are less rigorous than the companion requirements of Rule 23(b)(3)." Hanlon v. Chrylser Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id.

Plaintiffs have identified several common issues of fact and law, including the following: Plaintiffs' job requirements, Defendant's realistic expectations regarding Plaintiffs' job requirements, whether Defendant had a policy of requiring Plaintiffs to work overtime, whether Defendant had a policy and practice of refusing to afford Plaintiffs the opportunity to take meal breaks, whether Defendant had a policy and practice of failing to provide Plaintiffs with itemized wage statements, which of the tasks performed by Plaintiffs constitute "sales" for purposes of the outside salesperson exemption and commission salesperson exemption; whether Plaintiffs are exempt from overtime requirements as outside salespersons; whether Plaintiffs are exempt from overtime requirements as commission salesperson, whether Plaintiffs are exempt from overtime requirements under California's Motor Carrier Act exemption, and whether this action is preempted by federal law pursuant to the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (FAC ¶¶ 8-9; Mot. 8-9.) Although the factual basis for each class member's claims will vary based on the class member's individual experiences, the major legal issues and some of the factual questions are the same. A number of courts have found that the commonality requirement of Rule 23(a)(2) is satisfied where a putative class of employees challenges the employer's classification of those employees as exempt from overtime

1 requirements under state labor laws. See, e.g., Wang, 231 F.R.D. at 607-08. The
2 Court finds that Plaintiffs have satisfied the commonality requirement of Rule
3 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that the representative parties' claims be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The rule sets forth a "permissive standard[]": under Rule 23(a)(3), "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Rule 23 "does not require the named plaintiffs to be identically situated with all other class members. It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1175 (9th Cir. 1990) (internal quotation marks omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose . . . ." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id. (internal quotation marks omitted). In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." Gen. Tel. Co. of the Sw., 457 U.S. at 157 n.13.

The claims of named Plaintiffs Ramon Moreno and Ernesto Moraila are "reasonably co-extensive with those of absent class members." Hanlon, 150 F.3d at 1020. Each named Plaintiff alleges that he was employed by Defendant as Drivers in California during the class period. (FAC ¶¶ 5-6.) Both named

Plaintiffs also allege that they were improperly classified as exempt employees, were denied the opportunity to take meal breaks, and received wage statements that were not properly itemized. (Id. ¶ 23(a),(i),(k).) These are precisely the injuries alleged by the unnamed class members. The declarations of the named Plaintiffs bear a strong resemblance to the other declarations submitted by Plaintiffs. The factual allegations undergirding each cause of action predominantly focus on Defendant's conduct vis-a-vis all Drivers, rather than on conduct unique to the named Plaintiffs.

The Court finds that the putative class representatives have claims that are sufficiently typical of the class claims to satisfy Rule 23(a)(3).

### 4. Adequate Representation

Finally, Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is grounded in constitutional due process concerns: "absent class members must be afforded adequate representation before entry of a judgment which binds them." Hanlon, 150 F.3d at 1020 (citing Hansberry v. Lee, 311 U.S. 32, 42-43 (1940)). The Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. (citing Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978)). Both the named plaintiffs and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class. Fendler v. Westgate, 527 F.2d 1168, 1170 (9th Cir. 1975). This requirement again tends to merge with the commonality and typicality requirements. Gen. Tel. Co. of the Sw., 457 U.S. at 157 n.13.

Plaintiffs do not appear to have any conflicts of interest with other class members, nor does Defendant suggest that any conflicts exist. Defendant also has

1  not suggested that it has any unique defenses against Moreno or Moraila. Both
2  Moreno and Moraila have spent many hours investigating the case and assisting
3  counsel with discovery. (Markun Decl. ¶ 10.) They have also vigorously
4  prosecuted this action, having already successfully opposed Defendant's motion to
5  dismiss. (Id.)
6      Plaintiffs' counsel also appears equal to the task. Plaintiffs' counsel has
7  experience in both class action and employment litigation. (Id. ¶¶ 2-9.) They have
8  also devoted substantial time and resources to the matter (id.), and have
9  "rigorously prosecuted this action in that they have solicited class members,
10 retained an expert, and conducted research to support their allegations." Wang,
11 231 F.R.D. at 609 (finding adequacy of representation).
12     The Court finds at this stage that Plaintiffs and their counsel would provide
13 adequate representation for the class members as required by Rule 23(a)(4).
14 **B. Rule 23(b)**
15     Having satisfied all four requirements of Rule 23(a), Plaintiffs must now
16 satisfy at least one of the three alternative requirements of Rule 23(b). Plaintiffs
17 argue only that Rule 23(b)(3) has been met. Rule 23(b)(3) permits class
18 certification if "the court finds that the questions of law or fact common to the
19 members of the class predominate over any questions affecting only individual
20 members, and that a class action is superior to other available methods for the fair
21 and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).
22     **1. Predominance**
23     "Common questions may predominate where the resolution of a question
24 common to the class would significantly advance the litigation." Romero v.
25 Producers Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006). Thus, class
26 actions are "particularly apt" if a common defense is potentially applicable to the
27 class claims. Id. at 490. "This is because '[i]f the defense succeeds, the entire
28

litigation is disposed of. If it fails, it will not be an issue in the subsequent individual trials.'" Id. (quoting In re Agent Orange Prod. Liab. Litig., 818 F.2d 145, 167 (2d Cir. 1987)).[5]

Defendant has asserted four affirmative defenses that raise questions of law common to the class as a whole and that could potentially resolve the entire litigation.

### a. Federal Preemption

The existence of a potential federal preemption defense counsels strongly in favor of class certification. Defendant contends that Plaintiffs' claims depend on an interpretation of the CBA. (First Amended Answer p. 16, ¶ 21.) "Section 301 of the LMRA has broad preemptive effect over many state statues." Roy Allan Slurry Seal v. Laborers Int'l Union of N. Am. Highway and Street Stripers, 241 F.3d 1142, 1146 (9th Cir. 2001). "[I]t preempts state law when resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement." Id. (internal quotation marks omitted); see also Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988) (finding that § 301 preempts state-law claims when resolution of the claims "require[s] construing the collective-bargaining agreement"); Ward v. Circus Circus Casinos, Inc., 473 F.3d 994, 997 (9th Cir. 2007) ("Section 301 preempts state law claims that require the court to interpret a CBA provision that is reasonably relevant to the resolution of the dispute."). Defendant asserts several other affirmative defenses grounded in the CBA as well.

All Drivers are covered by the same provisions in the CBA. A determination of the preemption issue – as well as the other CBA-based

---

[5] If, however, "later evidence disproves Plaintiffs contentions that common issues predominate," the Court may decertify the class. Dukes v. Wal-Mart, Inc., 474 F.3d 1214, 1223-24 (9th Cir. 2007), citing Gen. Tel. Co. of Sw., 457 U.S. at 160.

11

affirmative defenses – is therefore appropriate for the class as a whole, and could potentially resolve the case on a class-wide basis.

### b. Outside Salesperson Exemption

#### i. The *Ramirez* Standard for Exempt Status

The dispute here centers on the need for an individualized inquiry in determining whether a class member is properly classified as an exempt employee. IWC Wage Order 7-80 provides that in order for an employee to be exempt as an outside salesperson more than one-half of the employee's work time must be spent on exempt duties. Cal. Code Regs. tit. 8, § 11070, subd. 2.(J); Ramirez v. Yosemite Water Co., 20 Cal. 4th 785, 789 (1999). In Ramirez, the California Supreme Court explained:

> A trial court, in determining whether the employee is [exempt], must . . . inquir[e] into the *realistic requirements of the job*. In so doing, the court should consider, first and foremost, how the employee actually spends his or her time. But the trial court should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job.

Id. at 802. Thus Ramirez calls for a two-step inquiry. First, the court must examine, in an individualized fashion, the work actually performed by an employee to determine how much of that work is exempt.[6] The trial court must then determine whether the employee's work was consistent with the employer's expectations, and whether those expectations were realistic.

---

[6] Presumably the analysis stops here if the court determines that the employee performs exempt tasks more than 50% of the time.

In Sav-On Drug Stores, Inc. v. Super. Ct. of Los Angeles County, 34 Cal. 4th 319 (2004), the California Supreme Court clarified the application of the Ramirez principles under California's class action procedure, explaining that Ramirez should not be read too broadly. "Any dispute over 'how the employee actually spends his or her time,' of course, has the potential to generate individual issues. But considerations such as 'the employer's realistic expectations' and 'the actual overall requirements of the job' are likely to prove susceptible of common proof." Sav-On, 34 Cal. 4th at 336-37 (quoting Ramirez, 20 Cal. 4th at 802).

Therefore, in determining whether an employee should be classified as exempt or non-exempt, an individualized, Ramirez-type inquiry must be conducted. The proper question for the Court at this stage, however, is whether this individualized inquiry is the predominant issue. If common questions pertaining to Defendant's overall policies and practices predominate over the individual question of whether each putative class member was actually non-exempt, then class certification is appropriate.

### ii. Common Legal and Factual Questions Predominate

The central common questions raised by this case are (1) were Drivers actually engaged in "sales activities"? and (2) did Gruma have a policy/expectation that Drivers would engage primarily in sales-related activities? Answers to these questions would be common to the class as a whole and are most appropriately resolved through a class action litigation.

First, the Court would be required to determine which of the Drivers' activities are sales-related. "Traditional" sales apparently constitute only a fraction of Drivers' responsibilities: Defendant's own training manual indicates

that Drivers are trained to solicit business in an expedited manner.[7] (Garcia Decl., Ex. E GRU 932.) The central issue facing the Court, therefore, would be whether Drivers' remaining responsibilities – *e.g.,* shelving, display set-ups, managing inventory, and interaction with store employees – can properly be characterized as "sales" activities.[8] Because the parties agree that all Drivers perform the same closed universe of daily tasks, this analysis could be undertaken for the class as a whole. On the one hand, if all of the daily tasks actually performed by Drivers are sales activities, then Drivers would necessarily be exempt employees. On the other hand, if the majority of the daily tasks actually performed by Drivers are not sales activities, then all Drivers would be non-exempt employees. It is therefore possible that Defendant's Salesperson Exemption defense could be resolved without resort to an individualized inquiry. Finally, even if individual proceedings prove necessary to determine precisely how many hours each class member spent performing sales activities, class action proceedings on the predominant common issues would ultimately conserve valuable judicial resources.

Gruma's policies and expectations regarding sales efforts by Drivers can also readily be analyzed on a class-wide basis. Defendant does not contend that it had different policies or expectations for different Drivers. To the contrary, Defendant has submitted evidence that all Drivers were provided with identical sales training (see Opp'n 6; Garcia Decl. Exs. D, E, F, and K) and were expected

---

[7] Gruma's Sales Training Manual includes instructions on a five minute sales presentation to customers. (Garcia Decl., Ex. E GRU 932.)

[8] Defendant submits the expert declaration of Dr. Frank Landy in support of their claim that these tasks are "selling" activities. (Opp'n 18; Landy Decl., Ex. A.) Plaintiffs object to the Landy Declaration on grounds that it is improper expert testimony. (Reply 15-18.) Whether particular activities are actually sales-related is irrelevant to class certification. The only relevant inquiry is whether sales activities, however they are ultimately defined, are common to the class. The Court has not relied on the Landy report in rendering its decision, and Plaintiffs' objection is therefore moot.

to perform the same closed universe of tasks (Opp'n 8-13). Any finding about Defendant's policies and expectations will be identical for all Class Members.

Individualized questions include (only for those employees who spent more time performing non-exempt tasks) the amount of overtime pay owed, the number of breaks that have been missed, and any expressions of dissatisfaction from Gruma with the work the Driver was actually performing. However, "'no matter how individualized the issue of damages may be . . . the mere fact that questions peculiar to each member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.'" Haley v. Medtronic, Inc., 169 F.R.D. 643, 651 (C.D. Cal. 1996) (quoting Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1196-97 (6th Cir. 1988)).

### c. Commissioned Salesperson Exception

Defendant also argues that a fact-specific inquiry will be required to determine whether Drivers are exempt as commissioned salespersons. Employees are exempt from California's overtime statutes if they earn one and one-half times the minimum wage and more than one-half of their compensation represents commissions. Ramirez, 20 Cal. 4th at 803. "Commission wages are compensation paid to any person for services rendered in the sale of such employer's property or services and based proportionately upon the amount or value thereof." Cal. Lab. Code § 204.1. A compensation scheme constitutes commission wages if (1) the employee is "involved principally in selling a product or service, not making the product or rendering the service," and (2) "the compensation is a percent of the price of the product or service." Ramirez, 20 Cal. 4th at 804 (internal quotation marks omitted).

All Drivers were paid under a single compensation scheme delineated in the CBA (Garcia Decl., Ex. R Appx. A), and all Drivers share the same general job

duties. Defendant, however, contends that a Driver's actual earnings would be a function of the Driver's individual sales efforts and the number and type of stores on the Driver's route. They argue that resolution of this question will require individual proof of the work performed by each Driver.

The Court disagrees. A determination of whether Drivers are paid commission wages under California law will turn on issues of law and fact common to all employees. For example, the inquiry into whether Drivers are principally involved in selling a product or are merely rendering a service should produce an answer common to all Drivers. Similarly, the Court can decide on a class-wide basis whether delivering products to a customer, in combination with the CBA's commission incentives, constitutes "principally selling a product." Ramirez, 20 Cal. 4th at 804. Finally, the Court will be required to make findings about the nature of the compensation scheme, such as whether a base salary combined with incentives for selling certain products makes compensation a percent of the price of the product or service. Common questions of law and fact therefore predominate.

### d. Motor Carrier Exception

The existence of a potential overtime exemption based on California's Motor Carrier Act also favors class treatment. California law exempts from overtime requirements any transportation or mercantile industry employee whose hours of service are regulated by the United States Department of Transportation ("DOT") pursuant to 49 C.F.R. §§ 395.1 to 395.3. Cal. Code Regs. tit. 8, §§ 11090(3)(L)(1), 11010(3)(A)(2)(a).

"Sections 395.1 to 395.3 set the federal maximum hour restrictions for employees of motor carriers." These regulations, however, apply only to drivers who use "commercial vehicles" in interstate commerce. 49 C.F.R. § 390.3(a).

16

### i. Commercial Vehicle

A commercial vehicle is defined as "any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle -- (1) Has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater . . . ." 49 C.F.R. § 390.5.

Defendant correctly notes that truck weight may vary from driver to driver. However, any individualized inquiry could easily be resolved by reference to either Gruma's records or records held by the Department of Motor Vehicles. See Romero, 235 F.R.D. at 490.

### ii. Interstate Commerce

To determine whether Sales Drivers are engaged in interstate commerce, the Court must consider "the character of the shipments [they were] charged with delivering, and the intent of the shippers as to the ultimate destination of the goods." Watkins v. Ameripride Servs., 375 F.3d 821, 825 (9th Cir. 2003).

> If a company places orders with an out-of-state vendor for delivery to specified intrastate customers, a temporary holding of the goods within an intrastate warehouse for processing does not alter the interstate character of the transportation chain culminating in delivery to the customer. If, on the other hand, a company places orders with an out-of-state vendor, with delivery to the company's intrastate warehouse for future delivery to customers yet to be identified, the transportation chain culminating in delivery to the customer is considered intrastate in nature.

Id. at 826.

The parties agree that Drivers deliver only in California, but Defendant has identified seventeen products manufactured out-of-state, shipped to Gruma's California warehouses, and delivered by Drivers to in-state customers. Defendant

1  contends that the only way to determine whether the MCA exemption applies is to
2  conduct individualized inquiries into which Drivers delivered out-of-state
3  products. Even so, this issue is potentially susceptible to a class-wide resolution.
4  Initially, the focus would be on Gruma's sales order system to determine whether
5  delivery of the seventeen products was the final part of "a practical continuity of
6  movement from the manufacturers or suppliers without the state, through [a]
7  warehouse and on to customers." Walling v. Jacksonville Paper Co., 317 U.S.
8  564, 569 (1943). If none of the seventeen products was involved in interstate
9  commerce, then the MCA exemption would be inapplicable to the entire class.
10 Even if the products *were* transported in interstate commerce, the focus of the
11 litigation would shift to the common question of whether these were "staple"
12 products – *i.e.*, products purchased by all stores and therefore transported by all
13 Drivers. If so, then the entire class would meet the interstate element of the MCA
14 exemption. Finally, even if individualized inquiries prove necessary, a
15 determination of which Drivers transported interstate goods could easily be made
16 by reference to Gruma's records.

### 2. Superiority

Pursuant to Rule 23(b)(3), certification is appropriate only if the Court finds "that a class is superior to other available methods for the fair and effective adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Id.

Rule 23(b)(3) also sets forth specific factors that the court may consider when determining whether class certification is the superior option:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the ligation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

No alternative mechanism of dispute resolution would be superior to a class action litigation. Two potential alternative methods of resolution are available in this case: (1) individual claims; and (2) administrative hearings by the California Department of Labor Standards Enforcement ("DLSE").

Here, individual actions do not appear to be a viable alternative to a class action. Most significantly, there is reason to doubt that many of the Class Members still have individual suits available as a recourse. On December 13, 2006, Gruma notified its Drivers that they would be terminated effective February 7, 2007. (Compton Decl. ¶ 2.) Drivers were offered a severance payment package. (Id. ¶ 4.) As a condition of acceptance, Drivers must execute a release of all claims against Gruma except those set forth in the instant action. (Id., Ex. F 9-11.) Many individual plaintiffs may no longer be able to assert their claims.

Individual DLSE hearings are an equally untenable alternative to a class action. DLSE hearings have several significant limitations:

> Injunctive relief is not available. The employer is typically represented by counsel; and if employees choose also to retain counsel, they cannot recover attorney fees. Moreover, a losing employer has a right to a trial de novo in superior court where the ruling of the hearing officer is entitled to no deference.

Bell v. Farmers Ins. Exch., 115 Cal. App. 4th 715, 746 (2004). Additionally, it is unclear whether the DLSE has the capacity to handle a sudden influx of several hundred cases. See id.

1  Consideration of the Rule 23(b)(3) factors yields the same result. First,
2  individual class members would derive no benefit from prosecuting a separate
3  action: "There would be less litigation or settlement leverage, significantly
4  reduced resources and no greater prospect for recovery." Hanlon, 150 F.3d at
5  1023. Indeed, it appears that the class members will be required to sign a release
6  form waiving their individual claims if they wish to continue working for Gruma.
7  Second, the Court is unaware of any existing litigation adjudicating these issues.
8  Third, there appears to be no consideration mitigating against concentrating the
9  litigation in this forum. Finally, as previously discussed, any individualized
10 inquiries that may arise are susceptible to relatively simple resolution and would
11 be manageable.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Class Certification.

Dated: 3-19-07

Dale S. Fischer
United States District Judge