ORIGINAL

DOCKETED ON CM

OCT - 9 2007

BY ___ S__ 008

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

**PRIORITY SEND**

Case No.   CV 05-7737 DSF (PLAx)                              Date   October 9, 2007

Title   Moreno, et al. v. Guerrero Mexican Food Products, Inc., et al.

Present: The Honorable   DALE S. FISCHER, United States District Judge

| Sandy Eagle | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:                Attorneys Present for Defendants:

Not Present                                       Not Present

**Proceedings:**   (IN CHAMBERS) Order GRANTING in Part and DENYING in Part Defendants' Motion for Summary Adjudication of Issues and to Decertify Class

Plaintiffs Ramon Moreno and Ernesto Moraila represent a class of "Drivers"[1] who were allegedly denied overtime, meal breaks, and itemized wage statements because their employer, Defendant Gruma Corporation,[2] erroneously classified them as "exempt." On January 9, 2006, Plaintiffs filed their First Amended Complaint ("FAC"). Plaintiffs pleaded the following causes of action: (1) unlawful failure to pay required overtime in violation of California Labor Code §§ 510 and 1194; (2) unlawful failure to provide adequate meal periods in violation of California Labor Code §§ 226.7 and 512; (3) failure to furnish wage statements in violation of California Labor Code §§ 226(a) and (e) and 226.3; (4) waiting time penalties pursuant to California Labor Code § 201 et seq.; and (5) unfair business practices in violation of California Business & Professions Code § 17200 et seq. (See FAC.)

This matter is before the Court on Defendants' Motion (1) for Summary Adjudication of Issues and (2) To Decertify the Class, by which Defendants seek partial summary judgment as to Plaintiffs' First and Third Causes of Action, on the basis that Plaintiffs are exempt from overtime requirements under applicable California Industrial Welfare Commission ("IWC") Wage Orders. Defendants also seek decertification of the class if their request for summary adjudication succeeds. Having considered the papers submitted by the parties and having heard the oral argument of counsel, the Court

---

[1] "Drivers" are defined as "sales drivers, extra drivers, and relief drivers." (See June 6, 2007 Order Re Proposed Class Notice 2.) Defendants generally refer to them in this motion as "sales drivers," and the Court does the same.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

GRANTS in part and DENIES in part Defendants' Motion for Summary Adjudication of Issues. Because Plaintiffs' Third Cause of Action alleges defects in wage statements beyond failure to account for hours worked, the Court defers ruling on summary adjudication of that claim.

## I. UNDISPUTED FACTS

Plaintiff Moreno was a driver from December 17, 1992 to January 5, 2005. (Def. Gruma Corp.'s Statement of Uncontroverted Facts and Conclusions of Law in Supp. of Mot. (1) for Summ. Adjudication of Issues and (2) To Decertify the Class ("UF") No. 3.) During the autumn of 2005, Moreno sold the truck he had used when working for Gruma, and is unsure of its weight, although he thinks it was between 6000 and 7000 pounds. (UF No. 6.)

Plaintiff Moraila was a driver from 1991 to 2007. (UF No. 8.) His vehicle registration card reflects that he drove a 1985 F350 two axle truck that weighed "15,000 GVW." (UF No. 10.)

Moreno's and Moraila's daily duties involved driving vehicles transporting goods. (UF No. 16.) Gruma markets and sells Guerrero products, including tostadas, tortillas, taco shells and related products. (UF No. 2.) On at least a monthly basis during the class period, Gruma's sales drivers made wholly in-state deliveries of a product called Tostada Nortena ("Tostadas"), manufactured outside of California by Gruma's affiliate Prodisa Productora Y Distribuidora Azteca S.A. De C.V. ("Azteca"). (UF Nos. 28, 34, 65-66.) Azteca ships Gruma products by motor carrier directly to Gruma's Rancho Cucamonga and Olympic facilities in southern California. (UF No. 36.) Tostadas have a sixty day shelf life. (UF No. 50.)

Gruma places orders with the manufacturers of its products based on orders provided by their sales drivers via handheld computers or by telephone. (UF No. 18.) Gruma's sales drivers, including Moreno and Moraila, place orders daily and pick up product requested at the warehouse two to three days later. (UF No. 19.) The orders entered on sales drivers' handheld computers are transmitted to Gruma's computer system. (UF No. 22.) Gruma's computer system compiles and organizes individual orders placed by sales drivers, which enables Gruma's logistics manager to monitor the aggregate daily orders. (UF Nos. 23-24.) Gruma checks the trends in the sales drivers' orders for Guerrero products on a weekly basis. (UF No. 25.) Gruma's logistics manager and the Olympic warehouse manager regularly forecast the amount of Guerrero products that will be sold, based on historical sales, upcoming holidays, trends in sales,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**PRIORITY SEND**

actual sales data, and upcoming promotions. (UF No. 57.)[3] The logistics manager and warehouse managers place orders for product with Gruma's customer service department, which places orders with Gruma's production divisions and outside manufacturers.[4] (UF Nos. 55-56.) Gruma's logistics manager also communicates any adjustments to scheduled orders to Gruma's customer service department, which then relays the modified purchase order to the manufacturer. (UF No. 27.)[5] To minimize orders of unwanted out-of-state products, Gruma monitors the number of stale and unsellable products on its sales drivers' routes. (UF No. 40.) Gruma's orders for products from its manufacturers are adjusted to account for sudden changes in sales in order to reduce the incidence of stale products remaining on shelves. (UF No. 63.)[6]

## II. LEGAL STANDARD

Courts may grant summary judgment in a party's favor "upon all *or any part*" of a party's claim. Fed. R. Civ. P. 56(a) (emphasis added). The standard and procedures for a motion for partial summary judgment are the same as for summary judgment of a claim. See Delta Sav. Bank v. United States, 265 F.3d 1017, 1021 (9th Cir. 2001).

Summary judgment shall be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific

---

[3] Plaintiffs dispute how frequently these forecasts are made. (Pls.' Statement of Genuine Issues in Opp'n to Mot. (1) for Summ. Adjudication of Issues and (2) To Decertify the Class; and Statement of Pls.' Additional Uncontroverted Facts in Opp'n ("GI") No. 57.) This dispute does not affect the outcome of this Motion.

[4] Plaintiffs dispute whether such orders can be fulfilled in time to meet sales drivers' needs three days later. (GI No. 56.) This dispute does not affect the outcome of this Motion.

[5] Plaintiffs' best evidence objection to this undisputed fact is overruled. The best evidence rule requires that an original of a writing be produced to prove the content of that writing. Fed. R. Evid. 1002. This fact does not concern the content of a writing.

[6] Plaintiffs dispute whether orders are ever adjusted upwards, but do not dispute that they are adjusted downwards. (GI No. 63.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**PRIORITY SEND**

facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(e).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48. The "opponent must do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Anderson, 477 U.S. at 250-51. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. See Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ." Anderson, 477 U.S..at 252. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). Rather, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). However, "[t]he district judge is not required to comb the record to find some reason to deny a motion for summary judgment." Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988).

### III. DISCUSSION

Defendants seek summary adjudication of Plaintiffs' First and Third Causes of Action, claiming Plaintiffs are exempt from California overtime laws. "Regulations governing overtime pay in California are issued by California's Industrial Welfare Commission (IWC). Wage orders issued by the IWC are quasi-legislative regulations that are to be interpreted in the same manner as statutes." Watkins v. Ameripride Servs., 375 F.3d 821, 825 (9th Cir. 2004).

The wage orders at issue here exclude from their overtime requirements "employees whose hours of service are regulated by: (1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13 . . . ; or (2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and the following sections, regulating hours of drivers." Cal. Code Regs. tit. 8 §§

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

11010(3)(A)(2), 11070(3)(K), 11090(3)(L) (2007).[7] If this "motor carrier exemption" ("MCE") applies to Plaintiffs, they cannot succeed on their claims for loss of overtime wages.

### A. Regulation Pursuant to 49 C.F.R. 395.1 to 395.13

Plaintiffs argue that Defendants have not met their burden of establishing that the MCE applies to Plaintiffs because 1) Plaintiffs' hours are not actually regulated by the Department of Transportation ("DOT"), as evidenced by Defendants' non-compliance with DOT regulations, 2) Plaintiffs are not engaged in interstate commerce, and 3) some Plaintiffs drive trucks that weigh too little to be subject to federal regulation. The first two arguments fail for the reasons discussed below. The third prevents summary judgment with regard to some drivers.

### 1. The MCE Does Not Require Compliance With DOT Regulations

Plaintiffs have submitted evidence meant to establish Defendants' non-compliance with various DOT regulations. (See GI Nos. 135-47.) They argue, on the basis of this evidence, that Plaintiffs' hours of service are not actually regulated by the DOT, and that the MCE does not apply to them. (Opp'n 12-14.) Plaintiffs rely on a concurring opinion in Watkins, noting that application of the MCE under California wage orders _may_ require actual regulation by the DOT, as evidenced by compliance with DOT regulations. See 375 F.3d at 829-31. This concurring opinion stated twice that it was not deciding the issue; it has been followed by no other court. This Court concludes that the California MCE should not be read as the concurring opinion suggests.

The California MCE excludes from overtime requirements "employees whose hours of service are regulated by: (1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13 . . . ." 8 C.C.R. §§ 11010(3)(A)(2), 11070(3)(K), 11090(3)(L) (2007). The plain language of the exemption requires that the hours of service be regulated – _i.e._, that the regulations listed govern the employees' hours of service – not that compliance with those regulations be enforced.

---

[7] Plaintiffs assert that their wages are governed only by section 11010. (Opp'n 7.) They note that the words "are regulated by," which precede the colon in sections 11070(3)(K) and 11090(3)(L), are missing in section 11010(3)(A)(2), and argue that this omission renders section 11010(3)(A)(2) unintelligible. (Opp'n 7-8.) The fifteen wage orders promulgated by the IWC follow a similar format. Collins v. Overnite Transp. Co., 105 Cal. App. 4th 171, 175 (2003). The same provision appears without the omission in eleven other orders. Id. In this context, the meaning of the provision is easily ascertained, despite the apparent clerical error. Cf. People v. Garcia, 21 Cal. 4th 1, 14-15 (1999) (gathering cases in which courts corrected minor clerical errors in statutes).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

The words "United States Department of Transportation" modify "Code of Federal Regulations, Title 49, Sections 395.1 to 395.13," merely describing what government body promulgated the regulations.

As with the federal MCE, Levinson v. Spector Motor Serv., 330 U.S. 649, 661, 676-77 (1947), the likely purpose of the California MCE is to prevent general overtime laws from interfering with the DOT's safety program. If the exemption only applied where a motor carrier could demonstrate compliance with DOT regulations, the slightest infraction of DOT regulations would subject the motor carrier to liability under both state and federal law – hardly the result contemplated by either. Alternatively, if DOT enforcement were necessary, any motor carrier that had not been the subject of a DOT enforcement action would be forced to comply with state overtime law. The Court declines to apply such a standard, which is not suggested by the language of the statute. Evidence regarding Defendants' actual compliance with DOT regulations or the DOT's efforts to enforce those regulations is irrelevant to application of the MCE.

## 2. Plaintiffs Engaged in Interstate Transportation

The DOT's rules regarding motor carriers only apply to interstate commerce. 49 U.S.C. § 13501; Watkins, 375 F.3d at 825. Plaintiffs contend that they were not engaged in interstate commerce, because they only drove routes entirely within California.

It is undisputed that Plaintiffs regularly carry a product manufactured in Mexico -- Tostada Nortena ("Tostadas"). (UF Nos. 33, 34, 65.) Tostadas are shipped by Gruma's corporate affiliate Azteca by motor carrier to Gruma's warehouses, where they are picked up by Gruma's sales drivers for local delivery. (UF Nos. 34, 36.) Plaintiffs argue that the Tostadas' stay in Gruma's warehouse is sufficient to interrupt their interstate journey. The Court disagrees.

The jurisdiction of the DOT "extends to transportation within a state that 'is a practical continuity of movement from the manufacturers or suppliers without the state, through [a] warehouse and on to customers . . . .'" Klitzke v. Steiner Corp., 110 F.3d 1465, 1469 (9th Cir. 1997) (alteration in original) (quoting Walling v. Jacksonville Paper Co., 317 U.S. 564, 569 (1943)). "The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey. A temporary pause in their transit does not mean that they are no longer 'in commerce' . . . ." Walling, 317 U.S. at 568. "Whether transportation is interstate or intrastate is determined by the essential character of the commerce, *manifested by shipper's fixed and persisting transportation intent at the time of the shipment*, and is ascertained from all of the facts and circumstances surrounding the transportation." Klitzke, 110 F.3d at 1469.

Plaintiffs argue 1) that the character of their shipments can only be ascertained by looking to Azteca's intent in shipping Tostadas to Defendants; 2) that Tostadas constitute such a small percentage of Defendants' and Plaintiffs' sales that they cannot make Plaintiffs' deliveries interstate in character; and 3) that Tostadas do not remain in a

practical continuity of interstate movement after stopping at Gruma's warehouses.

### a. The Court Need Not Rely Solely on Azteca's Intent

Plaintiffs argue that Azteca is the shipper of Tostadas, and that the Court must focus solely on Azteca's intent in determining the "essential character" of the shipments at issue. This approach is inconsistent with the case law. The Supreme Court has stressed that "commerce among the states is not a technical legal conception, but a practical one, drawn from the course of business." Walling, 317 U.S. at 570 (quoting Swift & Co. v. United States, 196 U.S. 375, 398 (1905)). Interstate commerce is established by "a practical continuity of movement from the manufacturers or suppliers without the state, through [a] warehouse and on to customers whose prior orders or contracts are being filled." Id. at 569 (emphasis added). Moreover, "[w]hether transportation is interstate or intrastate . . . is ascertained from all of the facts and circumstances surrounding the transportation." Klitzke, 110 F.3d at 1469 (emphasis added). The narrow focus Plaintiffs advocate cannot be squared with the practical, fact-based inquiry required by the case law.

Indeed, the cases considering whether in-state deliveries can constitute part of an interstate journey have not limited their inquiry as Plaintiffs suggest. For example, in Klitzke itself, the defendant ordered goods from out-of-state vendors, who shipped them via common carrier to the defendant. Id. at 1467. The goods were then unloaded, labeled for the customers, loaded onto the defendant's trucks, and delivered by the defendant's route salesmen. Id. The court held that "even though the shippers did not know the goods' ultimate destinations, the orders were placed and the goods were shipped to satisfy contracts between Steiner and its customers . . . . The goods were therefore in 'continuous transportation' . . . ." Id. at 1470 (emphasis added). The Klitzke court noted that in Walling, the Supreme Court likewise focused on in-state contracts where out-of-state vendors used common carriage to deliver the goods to the defendant. Id. The Court follows the lead of these cases and considers all facts and circumstances that bear on the essential nature of Plaintiffs' deliveries.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

**b. Plaintiffs' Deliveries of Tostadas Are Not So Minimal as To Avoid Application of the MCE**

Plaintiffs also argue that Tostadas constitute such a small portion of Gruma's and Plaintiffs' sales that they cannot make Plaintiffs' deliveries interstate in character. Generally, "even a minor involvement in interstate commerce as a regular part of an employee's duties can subject that employee to the Secretary of Transportation's jurisdiction." Reich v. Am. Driver Serv., Inc., 33 F.3d 1153, 1155 (9th Cir. 1994) (citing Morris v. McComb, 332 U.S. 422 (1947)). Nonetheless, Plaintiffs argue, on the basis of Coleman v. Jiffy June Farms, 324 F.Supp. 664 (S.D. Ala. 1970), that deliveries of Tostadas are *de minimis* in nature and do not invoke the MCE.

Although Coleman has been cited in dicta by the Ninth Circuit, see Reich, 33 F.3d at 1156, it has been criticized by other courts. See, e.g., Crooker v. Sexton Motors, Inc., 469 F.2d 206, 210 (1st Cir. 1972). There is good reason for the criticism. Coleman's holding is inconsistent with the Supreme Court's statement in Morris that "it is the character of the [employee's] activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Interstate Commerce] Commission's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment." 332 U.S. at 431-32 (internal quotation marks omitted). In Morris, the Court found that a mere four percent of time spent in interstate commerce was sufficient to invoke application of the Motor Carrier Act. Id. at 433-38. Coleman attempts to distinguish Morris on the basis that there, the shipper's interstate deliveries could wax and wane over time, while the shipments in Coleman were static and minimal. 324 F. Supp at 668-69. But this distinction is untenable, given Morris's holding that "[i]t is beyond question" that the Motor Carrier Act would authorize the Interstate Commerce Commission's ("ICC") regulation of working hours where drivers consistently worked in interstate commerce for only twenty-four minutes each day. 332 U.S. at 431-32.

The Court is not persuaded by the reasoning of Coleman. Plaintiffs are drivers, whose duties directly affect safety. See Levinson, 330 U.S. at 664; 29 C.F.R. § 782.2(b)(2). They are thus subject to regulation by the DOT to the extent they engage in interstate commerce, even if the percentage of interstate goods carried is small.

**c. Gruma's Anticipation of Customer Needs Establishes a Practical Continuity of Interstate Movement**

In Walling, the Supreme Court recognized that there are at least three situations in which goods remain in a practical continuity of interstate movement despite pausing in a warehouse before local delivery: 1) where the goods are special-ordered for customers; 2) where the goods are ordered pursuant to a contract or understanding with customers; and 3) where a wholesaler anticipates needs of specific customers and presents

particularized evidence showing "that the goods in question were different from goods acquired and held by a local merchant for local disposition."[8] 317 U.S. at 568-70; see also Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 878 (9th Cir. 1982) (holding that, under Walling, goods remain in interstate commerce where they respond to anticipated needs of customers, but not where they are "stored . . . for general inventory purposes.")

The undisputed facts demonstrate that Tostadas are purchased in anticipation of the needs of specific customers, and are not held in Gruma's warehouses with the mere hope that they will be sold. Tostadas are a perishable good. (UF No. 51.) Gruma thus undertakes to order only as much inventory as can be sold to its customers before it goes stale. (UF Nos. 40, 63.) Rather than merely maintaining a static inventory, Gruma endeavors to forecast the needs of its customers and tailors orders accordingly. Plaintiffs – Gruma's sales drivers – collect information about Gruma's customers while on their routes, determine an aggregate amount of product they will pick up for their route three days later, and transmit this information to Gruma via handheld computer each day. (UF No. 18.)[9] Gruma's computer system compiles individual orders placed by Plaintiffs, which enables Gruma's logistics manager to monitor the aggregate daily orders entered by the sales drivers. (UF No. 23.) Gruma checks trends in these orders on a weekly basis. (UF No. 25.) Gruma's logistics manager and the Olympic warehouse manager regularly forecast the amount of Guerrero products that will be sold, based on historical sales, upcoming holidays, trends in sales, actual sales data, and upcoming promotions. (UF No. 57.) Gruma's logistics manager communicates any adjustments to scheduled orders to Gruma's customer service department, which then relays the modified purchase order to the manufacturer. (UF No. 27.) Gruma's orders for product from its manufacturers must be adjusted, normally to account for any sudden changes in sales and to reduce the incidence of products going stale on customers' shelves.[10] (UF No. 63.)

---

[8] Plaintiffs' contention that, under Walling, goods do not remain in interstate commerce where they are intended for a stable group whose needs can be anticipated with precision is without merit. Walling expressly held open the question of whether goods fulfilling an anticipated need remain in interstate commerce, finding only that the evidence before it did not establish that the goods in question were of that character. 317 U.S. at 569-70. The Ninth Circuit subsequently found that goods remain in interstate commerce where they are purchased in anticipation of customer needs. Zoslaw, 693 F.2d at 878.

[9] Plaintiffs dispute Undisputed Fact No. 18 on the basis that Gruma's orders of Tostadas are too infrequent to actually fulfill these daily orders. As explained below, Plaintiffs' purported dispute is irrelevant here.

[10] Plaintiffs dispute whether Gruma ever increases orders to account for demand. (GI No. 63.) However, even if Gruma only decreases orders to prevent overstocking, this demonstrates that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

This evidence distinguishes Gruma's goods from goods that are simply held for sale to as yet unidentified customers. That Gruma orders only as many Tostadas as it believes will continue in a short period of time through its warehouse to the customers on its sales drivers' routes demonstrates that those goods remain in a practical continuity of interstate movement.

Thus, Plaintiffs' reliance on Watkins is misplaced. In Watkins, the court found that a driver was not engaged in interstate commerce when he made local deliveries of uniforms shipped to his employer's warehouse from out of state. The uniforms were fungible, non-perishable goods that remained in the warehouse for "weeks or months" until a customer placed an order for them. 375 F.3d at 827. In such circumstances, the driver's deliveries were not part of a "practical continuity of [interstate] movement." Id. (alteration in original). There is some similarity between this case and Watkins, in that Tostadas are fungible, and they are not earmarked for any particular customer when they arrive at Gruma's warehouse. However, in Watkins, there was no indication that the defendant based its purchases of out-of-state goods on any identifiable customer demand. Here, there is evidence of particular practices that distinguish Gruma's orders from goods that are simply held for local disposition. See 317 U.S. at 570. Defendants' evidence demonstrates that Tostadas are perishable goods, purchased in response to identifiable needs of customers, so that they are intended to pass through the warehouse in a short period of time.

Plaintiffs respond to this evidence on three grounds, arguing that 1) Plaintiffs' daily orders for product are inexact; 2) deliveries of Tostadas, and Gruma's adjustments to those deliveries, happen too infrequently to respond to specific orders placed by Plaintiffs; and 3) Tostadas remain in Gruma's warehouses for extended periods of time. (See, e.g., GI Nos. 60, 63.) These objections do not raise any genuine issue of material fact.

Plaintiffs' first and second arguments assume that only deliveries of specific orders of goods remain in interstate commerce after a pause in a warehouse. This is not the law. Walling identified three scenarios in which goods remain in interstate commerce despite coming to rest in a warehouse, only one of which was fulfillment of special orders. See 317 U.S. at 568-70. The third scenario – anticipation of customer needs – cannot require fulfillment of a particular order, because no "anticipation" would be necessary if the customer's order was known with precision. The evidence demonstrates that Gruma places its orders based on fact-based projections of customer demand. That no delivery of Tostadas from Azteca may arrive in time to fulfill a particular order placed by Plaintiffs does not change the interstate nature of that delivery.

---

Gruma only orders as much product as it believes will move quickly on to its customers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**PRIORITY SEND**

Also, because "anticipation" of needs is by nature inexact, that Plaintiffs estimate the demand of Gruma's customers does not demonstrate that Gruma's orders are not interstate in character.

The third argument fails as well. Hoping to show that Defendants do not in fact anticipate customer needs, Plaintiffs offer two types of evidence meant to establish that Tostadas remain in Gruma's warehouses for extended periods of time. First, they rely on a nearly identical paragraph in ten declarations stating that "Tostada Nortena has a product code of up to 60 days, but sometimes the Tostada Nortena product loaded onto my truck frequently had an expiration code date that was set to expire in as little as" eight to thirty days. (See, e.g., Decl. of Ernesto Moraila in Opp'n to Mot. for Summ. Adjudication and To Decertify ("Moraila Decl.") ¶ 8.; GI No. 92.) These statements do not create a triable issue of fact with regard to the interstate character of Plaintiffs' shipments. Even assuming that the declarations establish that Tostadas regularly remain in Gruma's warehouses until eight to thirty days before they are set to expire, they still are perishable goods that move through the warehouse within a limited period of time. Plaintiffs submit no evidence to the contrary. That the length of stay at the warehouse can vary within this limited time frame demonstrates at most some degree of error in Defendants' projections of demand – a degree of error that apparently is not significant enough to prevent Tostadas from moving on to customers before their expiration date.

But the declarations are not even evidence that Tostadas regularly remain in the warehouse for extended periods of time. It is unclear how frequently Plaintiffs saw soon-to-expire product, because Plaintiffs state that "sometimes" the product "frequently" was close to expiration. Also, Plaintiffs maintain that shipments of Tostadas take at least two weeks, and up to several weeks, to arrive at Gruma's warehouse. (GI Nos. 64, 120.) Thus, that some products may be close to expiration when picked up by drivers does not necessarily reflect a long lay-over at Gruma's warehouse. Plaintiffs' declarations do not raise any genuine issue of material fact.

Second, Plaintiffs submit the Declaration of Paul Torres in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Adjudication of Issues and to Decertify the Class ("Torres Decl."). Torres states that he was a District Sales Manager and an Area Sales Manager for Gruma, working in Gruma's Burbank warehouse. (Torres Decl. ¶¶ 3, 8.) As part of his responsibilities, he made sure "each facility out of which [he] worked had a sufficient stock of product to allow all the Guerrero Drivers to deliver all the product necessary." (Id. ¶ 10.) He tried to maintain a "large supply" of goods from Mexico, so that they would not run out. (Id. ¶ 11.) He also observed that other warehouses maintained sufficient stock to cover deliveries. (Id. ¶ 12.)

This declaration does not create any genuine issue of material fact with regard to Gruma's anticipation of customer needs. That there were sufficient quantities of goods to fulfill customer needs certainly is not evidence that those needs were not anticipated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL
**PRIORITY SEND**

The declaration also does not suggest that deliveries of Tostadas remained at some fixed level above that needed by customers. To the contrary, Torres states that the amount of product fluctuated (id. ¶¶ 11-12), that he would order additional product to respond to promotions (id.), and that at times supply would run low. (Id. ¶ 13.) These facts are all consistent with Gruma's uncontested evidence that it orders Tostadas based on projections of consumer demand.

Under the undisputed facts, Plaintiffs engaged in interstate commerce throughout the class period. As discussed in the following section, some Plaintiffs may have driven trucks that were too light for DOT regulation. However, the remainder were subject to DOT hours of service regulations, and thus were exempt from the overtime provisions of the IWC Wage Orders during the class period.

### 3. Some Members of the Class Drive Trucks Too Light To Be Regulated by the DOT

On August 10, 2005, 49 U.S.C. § 13102 was amended to alter the definition of "motor carriers" and "motor private carriers" so as to require transportation by a "commercial motor vehicle." See Musarra v. Digital Dish, Inc., 454 F. Supp. 2d 692, 701 n. 19 (S.D. Ohio 2006). A "commercial motor vehicle" must weigh at least 10,001 pounds. 49 U.S.C. § 31132. Prior to August 2005, DOT hours of service regulations contained the same limitation. Code of Federal Regulations, title 49, Section 395.1 states that hours of service regulations apply to "all motor carriers and drivers." A "driver" is defined as "any person who operates any commercial motor vehicle." 49 C.F.R. § 390.5. The hour limits in Code of Federal Regulations, title 49, Section 395.3, entitled "Maximum driving time for property-carrying vehicles," are explicitly limited to drivers of "property-carrying commercial motor vehicle[s]."

A commercial motor vehicle must have "a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater." Id.

Defendants have not established that Moreno's truck qualified as a commercial motor vehicle. Moreno stated in his deposition that he was unsure of its weight, but thought it was between 6,000-7,000 pounds. (UF No. 5.) Defendants submit evidence that all sales drivers were required to drive trucks with a "walk-in" compartment capable of carrying thousands of pounds of goods. (UF No. 30.) However, this does not establish that Moreno's truck weighed 10,001 pounds or more.

Defendants' authority holding that employees may be exempt under the Federal Labor Standards Act where the DOT has authority to regulate – but does not in fact regulate – hours of service, does not apply to IWC Wage Orders. As previously discussed, the Wage Orders require actual regulation by the DOT, not mere authority to regulate. Defendants have not yet demonstrated that Moreno was subject to DOT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

regulation during the class period, see Ramirez v. Yosemite Water Co., Inc., 20 Cal. 4th 785, 794-95 (1999) (holding that defendants bear the burden of establishing exemptions to California overtime requirements), and Moreno may not be exempt from IWC overtime requirements. Any other class member whose truck weighed less than 10,001 pounds during the class period would also not be exempted by DOT regulation.

### B. State Regulation

Because the Court has found that class members who drove trucks heavy enough for DOT regulation were exempt from overtime laws, it does not consider whether regulation under state law would provide an alternative basis for their exemption. However, class members who drove trucks weighing less than 10,001 pounds after August 10, 2005 might nonetheless be exempt from overtime compensation if they were regulated by Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 ("Section 1200").

Section 1200 applies to "farm labor vehicles and the vehicles listed in [California] Vehicle Code Sections 34500 and 34500.1." 13 C.C.R. § 1200. Plaintiffs do not drive farm labor vehicles or tour buses regulated under California Vehicle Code § 34500.1. However, Defendants claim that Plaintiffs were regulated pursuant to Vehicle Code Section 34500 ("Section 34500"). In particular, California Vehicle Code § 34500(j) applies to any "motortruck . . . that is regulated by the Department of Motor Vehicles, Public Utilities Commission, or United States Secretary of the Department of Transportation, but only for matters relating to hours of service and logbooks of drivers." This provision was amended on January 1, 2007. Prior to that date, it applied to any "motortruck . . . that is regulated by the Public Utilities Commission or the Interstate Commerce Commission, but only for matters relating to hours of service and logbooks of drivers." Cal. Veh. Code § 34500(j) (2001) (amended 2007).

In support of their claim that Plaintiffs were regulated under Section 34500, Defendants submit evidence that 1) Moreno and Moraila had Motor Carrier Property Permit fees from the Department of Motor Vehicles ("DMV") deducted from their paychecks (UF No. 11); 2) Moraila received a Motor Carrier Permit from the California Highway Patrol ("CHP") (UF No. 12); 3) Moraila received a Carrier Identification Number from the CHP (UF No. 13); and 4) Gruma expects its drivers to comply with the CHP's requirements, including applying for a motor carrier permit. (UF No. 43.)

This evidence does not establish that any Plaintiff other than Moreno or Moraila was regulated by the DMV or PUC during the class period. Items 1-3 pertain only to Moreno and Moraila. In addition, Item 4 does not establish that any drivers actually were regulated by the DMV or PUC. Gruma's expectation that its drivers comply with CHP requirements at best establishes Gruma's opinion regarding whether its drivers

were regulated. Moreover, Section 34500(j) requires regulation by the DMV, PUC, or ICC. Regulation by the CHP can occur for reasons other than application of Section 34500, and would not demonstrate that Plaintiffs are subject to Section 34500.

Item 1 also does not establish that Moreno was subject to Section 34500. Motor Carrier Property Permits are required for any commercial motor vehicle, defined as "any self-propelled vehicle listed in subdivisions (a), (b), (f), (g), and (k) of Section 34500, any motor truck of two or more axles that is more than 10,000 pounds gross vehicle weight rating, and <u>any other motor vehicle used to transport property for compensation</u>." Cal. Veh. Code § 34601 (emphasis added). This definition is broader than the definitions listed in California Vehicle Code § 34500. Thus, that Moreno paid for a Motor Carrier Property Permit does not establish that he fit into any category regulated under Section 34500. It also does not demonstrate regulation by the PUC or ICC.[11] Thus, Defendants have not established that any class member who drove a truck weighing less than 10,001 pounds was exempt from overtime requirements. Nor have Plaintiffs established the contrary.

### C. The Class Should Likely be Decertified as to the Plaintiffs' Overtime Claim

Because the MCE applies to Moraila, he is exempt from overtime. His claim must be dismissed and he is no longer a proper class representative for the overtime compensation claim. Likewise, all Drivers who drove trucks weighing at least 10,001 pounds are exempt. The Court has no information concerning how many class members, other than Moreno, may have had trucks below that weight. It may be that there are now insufficient members to meet the numerosity requirement. See Fed. R. Civ. P. 23(a). It also appears that Defendants must be given the opportunity to establish the weight of each individual truck, suggesting the central remaining issue as to this defense is more appropriate for individual analysis. The class action approach may no longer be superior to other available methods for adjudication of the controversy. See Fed. R. Civ. P. 23(b)(3). Finally, although the evidence was insufficient for the Court to decide the issue as a matter of law, Defendants may still seek to prove that Moreno's truck weighed at least 10,001 pounds. Moreno apparently has nothing more than his own "thought" that it weighed less to present as evidence. For this reason, the Court questions whether Moreno can be an adequate class representative.

---

[11] The DMV administers Motor Carrier Property Permits. See Cal. Veh. Code § 290; Hill Bros Chemical Co. v. Super. Ct., 123 Cal. App. 4th 1001, 1005 (2004). Moreno stopped working for Gruma on January 5, 2005 (UF No. 3), prior to amendment of California Vehicle Code § 34500(j) to include regulation by the DMV.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**PRIORITY SEND**

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Adjudication of Plaintiffs' First Cause of Action is GRANTED with regard to those class members who drove trucks weighing at least 10,001 pounds. It is DENIED as to the remainder of the class. Given this disposition, it is likely that the class should be de-certified, because individual issues will predominate over common issues. An individualized inquiry will be required to determine which class members drove trucks too light to be regulated by the DOT.

Plaintiffs may submit additional briefing regarding whether the class should remain certified as to the first cause of action by October 15, 2007.

IT IS SO ORDERED.