Jeffrey K. Compton (SBN 142969)
jcompton@mzclaw.com
Daria Dub Carlson (SBN 150628)
dcarlson@mzclaw.com
MARKUN ZUSMAN & COMPTON, LLP
17383 Sunset Boulevard, Suite A380
Pacific Palisades, California 90272
Telephone: (310) 454-5900
Facsimile: (310) 454-5970

T. David Copley (Pro Hac Vice
dcopley@kellerrohrback.com
Margaret E. Wetherald (Pro Hac Vice)
mwetherald@kellerrohrback.com
Keller Rohrback L.L.P.
1201 Third Avenue
Suite 3200
Seattle, Washington  98101-3052
Telephone: (206) 623-1900
Facsimile No.: (206) 623-3384

*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON MORENO and ERNESTO MORAILA, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GUERRERO MEXICAN FOOD PRODUCTS, INC., a division of GRUMA CORPORATION; and GRUMA CORPORATION, a Nevada Corporation,<br><br>Defendant. | Case No. CV05-7737 DSF (PLAx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Date:      October 20, 2008<br>Time:      1:30 p.m.<br>Judge:     Hon. Dale Fischer<br>Room:      Roybal 840 |

## <u>TABLE OF CONTENTS</u>

I.   Introduction ...................................................................................................1

II.  The Court Should Give Final Approval to the Settlement ...........................2

     A.   Standard For Final Approval ..............................................................2

     B.   The Settlement Is Entitled To A Presumption Of Fairness ................3

     C.   The Settlement Should Be Approved Under The *Hanlon*
          Criteria ...............................................................................................4

          1.   The Strength of Plaintiffs' Case ..............................................4

          2.   The Risks of Further Litigation ...............................................5

          3.   The Risk of Maintaining Class Action Status .........................6

          4.   The Amount Offered in Settlement ..........................................7

          5.   The Extent of Discovery Completed ........................................8

          6.   The Experience And Views Of Counsel ...................................8

          7.   The Class Received Proper Notice of the
               Settlement and Have Not Voiced Any Objections ..................9

     D.   The Settlement Provision for Attorneys' Fees and Costs
          Should Be Approved .........................................................................10

          1.   Attorneys' Fees and Costs Are Available Under
               California Wage and Hour Law .............................................10

          2.   Both Sides Agreed to Settle For the Fee/Cost
               Amount Recommended by Magistrate Judge
               Abrams ...................................................................................11

          3.   The Amount of Attorneys' Fees and Costs
               Specified in the Settlement is Not Excessive ........................12

     E.   The Settlement Provision for Class Representative
          Enhancement Should be Approved .....................................................14

III.    Conclusion ..................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## <u>Cases</u>

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135 (2000) ........................................................................3

*Ballen v. City of Redmond*, 466 F.3d 736 (9th Cir. 2006) ....................................13

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979)................................6, 9

*Church v. Consol. Freightways, Inc.*, No. 91-4168, 90-2290, 1993 WL 149840 (N.D. Cal. May 3, 1993) ......................................................................2

*City of Riverside v. Rivera,* 477 U.S. 561 (1986) ..................................................13

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ..................1, 2, 3

*Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794 (1996) ........................................3

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981)................................................................3, 9

*Evans v. Jeff D.*, 475 U.S. 717 (1986) ...................................................................10

*Farrar v. Hobby,* 506 U.S. 103 (1992) ...................................................................10

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) .........................................................6

*Hanlon v. Chrysler Corp*, 150 F.3d 1011 (9th Cir. 1998) ................................4, 14

*In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995), *aff'd,* 134 F.3d 133 (3d Cir. 1998) ............................................................................................................6

*In re Mego Fin'l Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 1992) ..........................8

*In re Pacific Enter. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989) .....................14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989) ...........................................................................................2

*Kerr's Catering Serv. v. Dep't of Indus. Relations*, 57 Cal.2d 319
    (1962) ...................................................................................................11

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)......................3, 9

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ............................13

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir.
    1982) ..................................................................................................2, 3, 9

*Parks v. Eastwood Ins. Serv., Inc.*, 240 Fed. Appx. 172, 2007 WL
    1430289 (9th Cir. 2007)......................................................................12

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..............................................14

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) .............................2

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294 (N.D. Cal.
    1995) .....................................................................................................15

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal.App.4th 440 (2000)...............13

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999)................10

## Statutes

42 U.S.C. § 1988...................................................................................................13

Business and Professions Code § 17200 et seq. .....................................................1

Code of Civil Procedure § 1021.5..........................................................................11

Labor Code § 1194(a) ............................................................................................10

## Other Authorities

4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS
    (4th ed. 2002) .........................................................................................2

IWC Wage Order 1 ..................................................................................................5

IWC Wage Order 7 ..................................................................................................5

MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MANUAL") ..................................2

**<u>Rules</u>**

Fed. R. Civ. P. 23(e) ............................................................................1, 2

Fed. R. Civ. P. 30(b)(6) ..................................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case was brought by Ramon Moreno and Ernesto Moraila, for themselves and others similarly situated (the "Class"), against Defendant Gruma Corp. for alleged violations of California wage and hour laws, including the provisions regarding overtime, meal periods, wage stubs, and waiting time penalties.  Specifically, Plaintiffs' claims arise from allegations that Defendant misclassified its sales drivers, relief drivers and extra drivers as exempt, and thereby denied them overtime compensation, meal breaks, itemized wage statements and waiting time penalties.  Plaintiffs also allege that Defendant's conduct constitutes unfair business practices in violation of Business and Professions Code § 17200 et seq.  Defendant denies all allegations of wrongdoing.

Pursuant to this Court's January 13, 2008, Order re Settlement Conference, the parties participated in a settlement conference before Magistrate Judge Paul Abrams on February 12, 2008.  At the settlement conference, and in subsequent conferences with Judge Abrams, the parties reached a fair, reasonable, and adequate settlement of all claims ("Settlement") (*see* Declaration of Jeffrey K. Compton ("*Compton Decl.*"), Exhibit A).   On April 21, 2008, the Court granted preliminary approval of the Settlement.

Now, the Class has received notice of the Settlement and Plaintiffs return to this Court seeking final approval of the Settlement.  As previously described in the Motion for Preliminary Approval, and as more fully explained below, the proposed settlement satisfies the test that it be "fair, adequate and reasonable."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (internal quotation marks and citation omitted).  This Court should grant final approval of the Settlement pursuant to Federal Rule of Civil Procedure 23(e).

## II.   THE COURT SHOULD GIVE FINAL APPROVAL TO THE SETTLEMENT

### A.   Standard For Final Approval

On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), the Court must determine whether the settlement is "fair, adequate and reasonable."  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  A settlement is fair, adequate, and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation."  *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MANUAL") §§ 21.6 *et seq.*, at 309.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See* 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS  § 11.41 (4th ed. 2002) (and cases cited); *City of Seattle*, 955 F.2d at 1268; *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976).

Although courts have "broad discretion" in determining that a proposed class action settlement is fair, the court's role "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *See Officers for Justice*, 688 F.2d at 625.  Accordingly, courts should give due regard to what is otherwise a "private consensual agreement" between the parties. *Id.  See also Church v. Consol. Freightways, Inc.*, No. 91-4168, 90-2290, 1993 WL 149840, *1 (N.D. Cal. May 3, 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989), *aff'd sub nom*, *City of Seattle*, 955 F.2d 1268; MANUAL § 21.61, at 309 ("The judicial role in reviewing a proposed settlement is critical, but limited to approving the proposed settlement, disapproving it, or imposing conditions on it.  The judge cannot rewrite the

agreement").  A court's approval of a class action settlement will only be reversed for a clear abuse of discretion.  *See Officers for Justice*, 688 F.2d at 626 ("we will reverse only upon a strong showing that the district court's decision was a clear abuse of discretion"); *City of Seattle*, 955 F.2d at 1276; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).

### B.   The Settlement Is Entitled To A Presumption Of Fairness

The Court should begin its analysis with a presumption that the Settlement is fair and should be approved:

> [A] presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining;  (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.

*Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1802 (1996); *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1146 (2000); *accord Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

This Settlement satisfies all four factors:

*First,* the Settlement was reached only after extensive arm's-length negotiations with the assistance of a Magistrate Judge (after a failed mediation with a private mediator).  The Parties engaged in a full day of settlement negotiations with Magistrate Judge Abrams and continued to engage in Settlement discussions for several days, until they finally reached a Settlement.  *Compton Decl.* ¶¶ 13-14.

*Second*, the parties engaged in extensive investigation and discovery for a period lasting over two years, and had the benefit of the Court's rulings on numerous partial summary judgment motions and motions in limine, so they unquestionably were able to understand its strengths and weaknesses.  *Id.* ¶ 16.

*Third*, Class Counsel are highly experienced in this type of litigation.  *Id.* ¶¶ 3-10; *Declaration of T. David Copley* ("*Copley Decl.*") ¶¶ 2-4.

*Finally*, not a single Class Member objected to the Settlement.  *Declaration of Tara J. Shaw ("Shaw Decl.")* ¶ 15.

Thus, the Settlement is presumptively fair.

## C.   The Settlement Should Be Approved Under The *Hanlon* Criteria

In *Hanlon v. Chrysler Corp.*, the Ninth Circuit set forth several factors that a district court should consider in evaluating the fairness of a class action settlement. In assessing the fairness of a settlement, the Court should weigh the following factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Each of the *Hanlon* factors warrants approval of the Settlement.

### 1.   The Strength of Plaintiffs' Case

As the Court is well aware, the merits of Plaintiffs' case, and the continued viability of the Court's certification of the class, have been hotly contested by the parties.  Plaintiffs brought the case claiming that all of Gruma's employee Guerrero drivers were entitled to overtime and meal break compensation for the time of their employment during the Class Period.  Class certification was granted on March 20, 2007 (Dkt. No. 235), and Gruma's initial motion for reconsideration was denied on May 17, 2007 (Dkt. No. 251)  Certain later rulings of the Court narrowed the scope of Plaintiffs' claims and cast a shadow over the continued

certification of the class.

While Plaintiffs believe their overtime claim is strong, Plaintiffs faced several challenges in bringing this claim to a successful class-wide resolution. Those challenges included: (1) the Court's ruling that overtime was available only to Class Members who drove trucks with a gross vehicle weight rating (GVWR) of 10,000 pounds or less (Dkt. No. 444); (2) Defendant's argument that GVWR could only be proved by examination of vehicle stickers; (3) Defendant's argument that the vehicles of some Class Members might have exceeded 10,000 pounds in actual operation, notwithstanding a GVWR of 10,000 pounds or less; and (4) Defendant's argument that individualized issues were presented related to "outside salesperson" exemption in IWC Wage Orders 1 and 7, and the "commissioned salesperson" exemption in IWC Wage Order 7.  Plaintiffs hotly disputed Defendant's arguments concerning proper proof of GVWR, the applicability of IWC Wage Order 7, and whether the "outside salesperson" exemption could be proved on a class-wide basis, but regardless of their merits, Defendants' arguments created uncertainty concerning the continued viability of the class certification for purposes of proving overtime liability.

While Plaintiffs believe their meal break claim is strong, Plaintiffs also faced several challenges in bringing this claim to a successful class-wide resolution. Those challenges included: (1) Addressing Gruma's exemption defenses (noted above); and (2) The challenge of proving missed meal breaks given the Court's interpretation of the statute on summary judgment (Dkt No. 448).  These challenges created uncertainty concerning the continued viability of class certification for purposes of proving meal break liability.

### 2.     The Risks of Further Litigation

To assess the fairness, adequacy, and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation.  *See In re*

*General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) ("the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement") (internal quotation marks and citation omitted), *aff'd*, 134 F.3d 133 (3d Cir. 1998); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).  This factor supports final approval here.

The Settlement affords the Class prompt, substantial relief, while avoiding significant legal and factual hurdles that otherwise may have prevented the Class from obtaining any recovery at all.  While Class Counsel believe that Plaintiffs' claims are meritorious, they are experienced and realistic, and they understand that continued litigation is inherently uncertain in terms of both outcome and duration. That this is a class action further amplifies the economies of time, effort and expense achieved by this Settlement.  The alternative to a class action – individual litigation – would tax private and judicial resources over a period of years.  The Settlement, on the other hand, provides to all Class Members, regardless of their means, substantial relief promptly and efficiently.

Finally, if Plaintiffs proceeded to trial and prevailed, it is clear that Gruma would appeal any such award, thereby substantially delaying payment to Class Members.

### 3.    The Risk of Maintaining Class Action Status

The Court has invited Defendant to file a motion for decertification based upon the Court's concerns that there are various issues that will have to be decided on an individual basis, such as the GVWR of the Class Members' respective vehicles, whether or not Class Members were advised of their right to take a meal break and whether they actually took a meal break, and the number of overtime hours worked by each Class Member.  Although Plaintiffs believe that the Court's initial decision to certify the Class was correct, there is a realistic possibility that

1  the Court might have reconsidered its class certification order.

2  **4.    The Amount Offered in Settlement**

3  The $1,730,000 maximum settlement payment to the Class through the

4  Claims Program is reasonable given the claims asserted and the uncertainties in the

5  outcomes under the law as discussed above.  *See Compton Decl.* ¶ 16; *Copley*

6  *Decl.* ¶ 5.

7  Under the Settlement, an independent Claims Administrator – CPT – has

8  been retained to contact Class Members, process claims forms, and resolve any

9  disputed claims.  Settlement Agreement ¶¶ 31-40.  The Claims Administrator has

10  already begun processing claims so the money can be distributed promptly in the

11  event this Court grants Final Approval to the Settlement.  *Shaw Decl.* ¶ 2.  If the

12  Court grants Final Approval, the Settlement requires Gruma or its designee to issue

13  timely payments to each Class Member with an Administrator-approved claim, and

14  file a declaration with the Court confirming those payments within 20 days of the

15  Settlement Effective Date.[1]  Settlement ¶ 40.

16  Under the Settlement, Gruma will pay up to $1,258,000 meal break claims,

17  based on specific criteria.  Settlement ¶ 24(b).  At this time, Class member claims

18  have been approved for 27,673 of the 38,351 total meal break work weeks, a

19  claims rate of approximately 72%.  *Shaw Decl.* ¶ 17.  If this percentage holds,

20  Class Members will receive in excess of $905,000 for meal break claims.

21  Under the Settlement, Gruma will pay up to $472,000 overtime claims,

22  based on specific criteria.  Settlement ¶ 24(b).  At this time, Class member claims

23  have been approved for 14,430 of the 19,481 total overtime work weeks, a claims

24  rate of approximately 74%.  *Shaw Decl.* ¶ 18.  If this percentage holds, Class

25  Members will receive in excess of $349,000 for overtime claims.

26

27  [1] If the Court grants Final Approval on October 20, 2008, the Settlement effective

28  date would be November 20, 2008 if no appeals are filed.

In addition to these cash payments to the Class through the claims program, the Settlement calls for Gruma to pay the costs of the claims program (up to $17,500). Settlement ¶ 23. It appears that the total cost of the claims program will be below this threshold – it is currently estimated to be $12,159.72. *Shaw Decl.* ¶ 19.

The Settlement also calls for Gruma to pay $20,000 to Class representative Ramon Moreno, $10,000 to Class representative Ernesto Moraila, and $1,175,000 Class Counsel for fees and costs. Settlement ¶¶ 21-22. These Settlement provisions are addressed in further detail below.

All told, the Settlement requires Gruma to pay up to $2,935,000, with the final amount depending on the results of the ongoing claims program. This is an excellent recovery for the Class.

### 5.      The Extent of Discovery Completed

As the docket demonstrates, this case was actively litigated from the beginning of the case in October 2005 through the settlement reached in February 2008. The parties conducted extensive written discovery and each side responded to many document requests. Plaintiffs deposed many Gruma managers and conducted depositions of numerous Gruma representatives pursuant to Rule 30(b)(6). Defendant conducted two days of depositions for each class representative and deposed a number of other Class Members and various other witnesses. Both sides retained multiple experts and deposed the other side's experts. *Compton Decl.* ¶ 17(b). The amount of discovery completed certainly supports final approval, particularly considering that "'formal discovery is not a necessary ticket to the bargaining table' . . . ." *In re Mego Fin'l Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 1992).

### 6.      The Experience And Views Of Counsel

Class Counsel support the Settlement as fair, reasonable, and adequate, and in the best interest of the Class as a whole. *Compton Decl.* ¶ 16; *Copley Decl.* ¶ 5.

The endorsement of qualified and well-informed counsel of a settlement as fair, reasonable, and adequate is entitled to significant weight.  *See Officers for Justice*, 688 F.2d at 625; *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 617; *Linney,* 151 F.3d at 1242.

### 7.    The Class Received Proper Notice of the Settlement and Have Not Voiced Any Objections

The Settlement specifies that the Class receive comprehensive Notice of the proposed Settlement, including notice via First Class Mail, updating addresses through the United States Postal Service's National Change of Address database, standard skip-tracing methods, and reminder postcards.  Settlement ¶¶ 26-30.

Plaintiffs' motion for preliminary approval outlined a suitable method for providing Class Notice, which the Court approved in the course of granting Plaintiffs' motion for preliminary approval.

The parties agreed that CPT would be retained to administer the Class Notice.  CPT was also selected to serve as the Claims Administrator.  *Shaw Decl*. ¶ 2.  Among other duties, CPT was charged with printing and mailing to Class Members the Notice of Class Action Settlement and Claim Form ("Notice Packets"), processing undeliverable mail and locating updated addresses for Class Members, receiving other communications about the Settlement, and filing any required reports with the Court.  *Id*.

After receiving English-language and Spanish-language versions of the Court-approved text for the Notice, CPT printed exemplar Notices, received approval from both Plaintiffs and Defendant, obtained Class mailing lists from Defense Counsel, updated the mailing lists through the NCOA database, and prepared the Notices for mailing. *Id*. ¶¶ 3-6.

On July 3, 2008 the Notice Packets were mailed via U.S. first class mail to all Class Members. *Id*. ¶ 7.  On July 28, 2008, CPT mailed reminder postcards in English and Spanish to all Class Members who had not filed a Claim Form to date.

1    *Id*. ¶ 8.

2          During the period from July 3, 2008 through August 12, 2008, twenty seven

3    Notice Packets were returned to CPT by the Post Office.  Four had a forwarding

4    address and were promptly forwarded.  For the others, CPT performed a standard

5    skip trace using Accurint, one of the most comprehensive address databases

6    available.  Twenty Notice Packets were re-mailed as a result of better addresses

7    found through skip trace during the claims period. *Id.* ¶¶ 9-10.

8          CPT has not received any objections to the Settlement.  *Id.* ¶ 15.   The

9    positive reaction of the Class warrants approval of the Settlement.

10    **D.    The Settlement Provision for Attorneys' Fees and Costs Should Be Approved**

11
12          **1.    Attorneys' Fees and Costs Are Available Under California Wage and Hour Law**

13          A district court has both the authority and the duty to determine the fairness

14    of attorneys' fees in a class action settlement.  *Zucker v. Occidental Petroleum*

15    *Corp.*, 192 F.3d 1323 (9th Cir. 1999).  The amount of fees to be awarded rests in

16    the court's sound discretion. *Evans v. Jeff D.*, 475 U.S. 717, 736 n. 26 (1986).

17          Because of settlement resulting in payment to class, Plaintiffs are entitled to

18    reasonable attorney fees under the substantive law of California. Labor Code §

19    1194(a) provides, in pertinent part, that: "Notwithstanding any agreement to work

20    for a lesser wage, any employee receiving less than the . . . legal overtime

21    compensation applicable to the employee is entitled to recover in a civil action the

22    unpaid balance of the full amount of this . . . overtime compensation, including

23    interest thereon, reasonable attorney's fees, and costs of suit."  Accordingly, the

24    Class recovery in this case triggers entitlement to an award of reasonable

25    attorney's fees and costs. *See Farrar v. Hobby,* 506 U.S. 103, 111-13 (1992) ("a

26    plaintiff 'prevails' when actual relief on the merits of his claim materially alters the

27    legal relationship between the parties by modifying the defendant's behavior in a

28

way that directly benefits the plaintiff;" a "material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant").

Code of Civil Procedure § 1021.5 also provides, in pertinent part, that a court may award attorneys' fees to a successful party:

> in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate; and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

California has a strong public policy in favor of the timely payment of wages to employees. "It has long been recognized that wages are not ordinary debts, that they may be preferred over other claims, and that, because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay when it is due." *Kerr's Catering Serv. v. Dep't of Indus. Relations*, 57 Cal.2d 319, 326 (1962).

### 2. Both Sides Agreed to Settle For the Fee/Cost Amount Recommended by Magistrate Judge Abrams

In order to maximize the benefit to the Class, Counsel refused to negotiate fees until agreement was reached on the amount to be paid for the overtime and meal break claims. *Compton Decl.* ¶ 22.

Once agreement was reached on the payments to the Class, Class Counsel suggested that fees be left wholly in the discretion of this Court. *See, e.g., Parks v. Eastwood Ins. Serv., Inc.*, 240 Fed. Appx. 172, 2007 WL 1430289 (9th Cir. 2007). Gruma rejected this proposal. *Compton Decl.* ¶ 22. Gruma wanted to

negotiate the fees and cost payable to fix a maximum sum certain for Gruma's payments owing in the case.

Gruma knew that it was at risk for Class Counsel's entire lodestar, plus possible enhancement – a risk in excess of $4 million.  After several additional hours of negotiation, Magistrate Judge Abrams presented a "mediator's proposal" for fixing fees and costs at $1,175,000.  *Id.* While this sum is substantially less than the actual fees and costs Class Counsel had invested in the case, Class Counsel accepted Judge Abrams' proposal in order to secure a settlement for the benefit of the Class.  Gruma accepted the mediator's proposal too, because it capped Gruma's liability for fees and costs to a sum certain.

### 3.  The Amount of Attorneys' Fees and Costs Specified in the Settlement is Not Excessive

The amount requested as attorneys' fees and costs represents a sizable *discount* on counsel's actual lodestar.  Accounting records demonstrate that Markun Zusman & Compton, LLP ("MZC") devoted 5647 attorney hours and 1332.80 paralegal hours to prosecution of this case.  *Compton Decl.* ¶ 17.  By Order dated September 17, 2007, Keller Rohrback L.L.P. ("KR") was added as Class Counsel.  KR spent 1381.3 attorney hours and 220.2 paralegal and librarian hours in prosecution of this action.  *Copley Decl.* ¶ 9.  Class Counsel submit herewith detailed summaries of the work performed, which included extensive work involving investigations and factual research, discovery, pleadings, legal research , motions practice, class certification, court appearances, settlement efforts, and litigation strategy and analysis.  *Compton Decl.* ¶ 17; *Copley Decl.* ¶¶ 6-8.  Applying standard hourly rates to the time incurred, the total lodestar in this case is more than $4 million.  *Compton Decl.* ¶ 20; *Copley Decl.* ¶¶ 10-12.

In addition to fees, MZC incurred $323,417.55 in actual out of pocket costs and KR incurred actual out of pocket costs of $35,658.45.  *Compton Decl.* ¶ 21; *Copley Decl.* ¶13.  MZC and KR also had significant internal costs for copies,

1  postage, computerized research, telephone and facsimile charges which are not

2  reflected in these totals.  *Compton Decl.* ¶ 21; *Copley Decl.* ¶ 14.

3      Counsel's fee and costs lodestar is presumptively reasonable.  *Ballen v. City*

4  *of Redmond*, 466 F.3d 736, 745-46 (9th Cir. 2006) (characterizing the lodestar

5  figure as the "presumptively accurate measure of reasonable fees" when

6  calculating permissible fees under 42 U.S.C. § 1988).  Counsel's lodestar is

7  evaluated on its own terms (*i.e.*, the reasonableness of the work performed, the

8  hourly rates charged, and the expenses incurred), and is not limited by the amount

9  of damages recovered in the case. *See, e.g., City of Riverside v. Rivera,* 477 U.S.

10  561 (1986) ($33,350 recovery and $245,456.25 attorney's fee award in a 42 U.S.C.

11  § 1988 case involving police brutality); *Vo v. Las Virgenes Municipal Water Dist.*,

12  79 Cal.App.4th 440 (2000) ($37,500 recovery and $470,000 attorney's fee award).

13      The law and the circumstances of this case could easily justify an attorneys'

14  fee/cost award in the range of $4,430,000 (before any proper upward adjustment),

15  but as noted previously, Plaintiffs compromised the attorneys fee issue based on

16  Judge Abrams' recommendation and capped Defendants' liability at $1,175,000,

17  which represents a *discount* of over 73% on the actual fees and costs incurred.

18      Under these circumstances, the requested fee award is imminently

19  reasonable.  All factors analyzed in assessing a reasonable attorney's fee are

20  present here. As Chief Judge Kozinski wrote in *Moreno v. City of Sacramento*, 534

21  F.3d 1106, 1115 (9th Cir. 2008), "The inquiry must be limited to determining

22  whether the fees requested by this particular legal team are justified for the

23  particular work performed and the results achieved in this particular case. The

24  court may permissibly look to the hourly rates charged by comparable attorneys for

25  similar work, but may not attempt to impose its own judgment regarding the best

26  way to operate a law firm, nor to determine if different staffing decisions might

27  have led to different fee requests."

28      Here, Class Counsel obtained a very good result for the class.  Plaintiffs

1   obtained a significant benefit on behalf of the Class when this suit prompted

2   Gruma to post and disseminate a requirement for meal breaks, and to require daily

3   meal breaks to be entered into each driver's handheld computer.  Through this

4   settlement, Plaintiffs also have conferred a significant pecuniary benefit on the

5   Class.  It cannot be disputed that Class Counsel expended substantial efforts on

6   behalf of the Class, brought their significant experience and skill to bear, and

7   assumed a large risk of non-payment.

8       The Class has shown its support for the settlement and the efforts of Class

9   Counsel.  No Class member has objected to the proposed fee/cost award.  *See, e.g.,*

10  *Hanlon*, 150 F.3d at 1026; *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

11  Judicial policy favors settlement in class actions and other complex litigation

12  where substantial resources can be conserved by avoiding the time, cost, and rigors

13  of formal litigation. *In re Pacific Enter. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D.

14  Ariz. 1989).  Given these factors, the Court should approve the discounted fee/cost

15  award sought by Plaintiffs, with the equal division of the award requested by Class

16  Counsel.

17  **E.   The Settlement Provision for Class Representative Enhancement
         Should be Approved**

18

19      Both Mr. Moreno and Mr. Moraila expended significant time and effort in

20  serving as class representatives.  *Compton Decl.* ¶ 24.  Mr. Moraila remained

21  employed by Gruma throughout the class period, subjecting him to potential

22  retaliation.  *Id.*  Mr. Moreno lost his job with Gruma during the class period

23  following a disability, and was able to devote extensive time to assisting with Class

24  Counsel in communicating with the Class.  *Id.*

25      Mr. Moreno and Mr. Moraila were each deposed for two days, and each

26  responded to significant discovery requests.  *Id.*  Both attended the full day

27  Settlement conference with Judge Abrams and were involved in reaching the

28  agreed Settlement.  The settlement enhancement of $10,000 to Mr. Moraila and

$20,000 to Mr. Moreno should be approved. *See, e.g., Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294 (N.D. Cal. 1995). CPT has not received any objections to the proposed Class representative enhancement payments. *Shaw Decl.* ¶ 15.

## III.   CONCLUSION

For all the foregoing reasons and taking into consideration the interest of the Class in timely relief and the expense and uncertain outcome of continued litigation, the proposed Settlement should be finally approved. Plaintiffs request that the Court:

(1)   Order Final Approval of the proposed Settlement as fair, adequate and reasonable;

(2)   Order that Gruma issue the payments specified in the Settlement, including:

(a)   Payment of Distributions to Class Members for Approved Meal Break Claims, as determined by the Claims Administrator, not to exceed $1,258,000;

(b)   Payment of Distributions to Class Members for Approved Overtime Claims, as determined by the Claims Administrator, not to exceed $472,000;

(c)   Payment to the Claims Administrator in the amount of $12,159.72;

(d)   Payment to Class Counsel in the amount of $1,175,000 for fees and costs, to be allocated $587,500 to Markun Zusman & Compton, LLP and $587,500 to Keller Rohrback L.L.P.; and

(e)   Payment to Class representative Ramon Moreno in the amount of $20,000 and to Class representative Ernesto Moraila in the amount of $10,000.

(3)   Enter Final Judgment in this action in the form of the Order and Final Judgment submitted herewith; and

(4)   Retain continuing jurisdiction over the implementation, interpretation, administration, and consummation of the settlement.

1

2    DATED this September 22nd, 2008.

3                              KELLER ROHRBACK L.L.P.

4

5

6    By _____

7        T. David Copley (*pro hac vice*)
         *Attorneys for Plaintiffs and the Certified*
8        *Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am employed in the County of King, State of Washington, over the age of eighteen years, and not a party to this action.  My business address is Keller Rohrback L.L.P., 1201 Third Avenue, Suite 3200, Seattle, Washington 98101.  I hereby certify that on September 22, 2008, I electronically filed the foregoing documents: **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, DECLARATION OF JEFFREY COMPTON, DECLARATION OF T. DAVID COPLEY, and DECLARATION OF TARA SHAW** with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all known counsel of record, listed below:

Scott J. Witlin, Esq.
David Garcia, Esq.
OGLETREE, DEAKINS, NASH, SMOAK & STEWART P.C.
633 West Fifth Street, 53rd Floor
Los Angeles, California  90071
(213) 239-9045 FAX

R. Dewitt Kirwan
AKIN GUMP STRAUSS HAUER & FELD, LLP
2029 Century Park East, Suite 2400
Los Angeles, California  90067
(310) 229-1001 FAX

Gregory S.C. Huffman
THOMPSON & KNIGHT, LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201-2533
(214) 880-3286 FAX

I declare under penalty of perjury under the laws of the United States and the State of Washington that the above is true and correct.  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 22, 2008, at Seattle, Washington.


 /s/ Diana D. Jones
Diana D. Jones